UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID CASILLAS,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00629 EAW

## INTRODUCTION

Represented by counsel, plaintiff David Casillas ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on October 19, 2015. (Dkt. 6 at 114, 115).[1] In his application, Plaintiff alleged disability beginning October 19, 2014, due

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

- 1 -

to compression of discs in back, degenerative disc disease, difficulty sleeping, chronic pain in left leg, difficulty walking and standing, thoracic radiculitis, numbness in back, spondylosis, and chronic pain and stiffness in left hip. (*Id.* at 115-16). Plaintiff's application was initially denied on January 29, 2016. (*Id.* at 129-38). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore on December 19, 2017, in Buffalo, New York. (*Id.* at 67-104). On March 1, 2018, the ALJ issued an unfavorable decision. (*Id.* at 31-49). Plaintiff requested Appeals Council review; his request was denied on March 20, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 15, 2015, the application date. (Dkt. 6 at 36).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "lumbar radiculopathy; lumbar spondylosis without myelopathy; neuritis; disc displacement and degeneration; lumbar disc herniations; grade 1 [anterolisthesis] of the lumbar spine; lumbago; and a left hip acetabular labrum tear and cam femoroacetabular

impingement." (*Id.*). The ALJ also found that Plaintiff's medically determinable impairments of hypertension and anxiety with panic attacks were non-severe. (*Id.* at 37).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 38). In particular, the ALJ considered the requirements of Listing 1.04 in reaching her conclusion. (*Id.* at 38-39).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the additional limitations that:

> [Plaintiff] can lift and carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can occasionally push, pull, stoop, kneel, crouch, and climb stairs and ramps, but can never crawl or climb ladders, ropes, or scaffolds.

(*Id.* at 39).

At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing his past relevant work as a collections clerk. (*Id.* at 43). The ALJ further relied on the VE's testimony to make an alternative step five finding that, taking into account Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of appointment clerk, telemarketer, and document preparer. (*Id.* at 44).

Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time since the date Plaintiff's application for SSI was filed. (*Id.* at 44-45).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse, or in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly evaluate Listing 1.04A at step three of the sequential analysis "because the evidence shows Plaintiff clearly met the Listing." (Dkt. 10-1 at 7). The Court has considered this argument and, for the reasons discussed below, finds it to be without merit.

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation marks and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)) (alteration in original). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence

considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotation marks and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Social Security regulations provide the following with regard to the requirements of Listing 1.04A:

> Listing 1.04(A) requires—in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture—"[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (citing Listing 1.04A). The SSA "has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ('AR') issued in 2015." *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019); *see* SSR 15-1(4), 80 Fed. Reg. 57418-02 (2015). Although ARs are guidance documents that do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019) ("[T]he Congress delegating regulatory authority to an agency intends as well to give that agency considerable latitude to construe its ambiguous rules."); *see also Wahler v. Comm'r of Soc. Sec.*, No. 1:19-CV-00549 EAW, 2020 WL 3496300, at *4 (W.D.N.Y. June 29, 2020) (according deference to AR 15-1(4)); *Ramirez Morales v.*

*Berryhill*, No. 6:17-CV-06836-MAT, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019) ("[T]his Court will accord the policy position set forth in AR 15-1(4) substantial deference."); *Atkins v. Colvin*, No. 15-1168-JWL, 2016 WL 2989393, at *10-12 (D. Kan. May 24, 2016) (applying the policy position set forth in AR 15-1(4)); *Smith v. Colvin*, No. 2:15-CV-00107-AA, 2016 WL 8711697, at *3-4 (D. Or. Feb. 5, 2016) (according substantial deference to AR 15-1(4)).[2]

In AR 15-1(4), the SSA specifies "that for a disorder of the spine to meet listing 1.04A at step three in the sequential evaluation process, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A."  80 Fed. Reg. at 57420. After these criteria are established, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months."  *Id.* In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A."  *Id.*

At step three of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity

---

[2] AR 15-1(4) was issued in response to the Fourth Circuit's decision *in Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), that the plaintiff could meet Listing 1.04(A) even though his relevant symptoms were not all simultaneously present.  This Court has previously held that, in the absence of a similar holding from the Second Circuit, it will afford this aspect of AR 15-1(4) substantial deference.  *See Wahler*, 2020 WL 3496300, at *4.  However, as described more fully below, the issue in this case is not simply that the medical criteria of Listing 1.04A were not all simultaneously met, but that some of them were not met at all, and that the requisite level of severity did not persist for a continuous 12-month period.  Accordingly, even if applicable in the Second Circuit, the holding in *Radford* does not conflict with the Court's conclusion in this case.

of Listing 1.04A, stating that:

> The evidence does not reveal an inability to ambulate effectively (Ex. 3F; 5F; 8F-9F; 12F-13F; and 19F).  The evidence also does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising testing (Ex. 1F-3F; 5F; 8F-9F; 11F-14F; 16F; and 19F).  Additionally, diagnostic studies did not reveal evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication (Ex. 3F; 5F; 9F; and 12F-13F).

(*Id.* at 39).  For the reasons set forth below, the Court finds that the ALJ's conclusion was supported by substantial evidence.

### A. Limitation of Motion of the Spine

Plaintiff's treatment records contain some evidence that Plaintiff's spine had limited motion.  (*See* Dkt. 6 at 308 (at June 22, 2015, examination, Dr. Jose Perez-Brache noted decreased range of motion in back), 342 (at October 21, 2015, appointment, PA Hanretty noted limited range of motion in lumbosacral spine), 348 (at August 17, 2015, appointment, PA Hanretty noted the same)).  However, these observations were noted over the course of three appointments between June and October 2015.  There is no evidence that before or after this time period, Plaintiff was observed to have limited motion in his spine.  In fact, on December 7, 2015, Dr. Jeremy Doak observed normal cervical spine range of motion. (*Id.* at 386).  Accordingly, Plaintiff has failed to show that his symptoms satisfied this requirement for a continuous period of 12 months.

### B. Motor Loss with Sensory Loss or Reflex Loss

The Commissioner's regulations provide that motor loss may be shown by an "inability to walk on the heels or toes, to squat, or to arise from a squatting position."  20

C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1); *see also Olechna v. Astrue*, No. 08-CV-398, 2010 WL 786256, at *6 (N.D.N.Y. Mar. 3, 2010) ("Plaintiff's muscle weakness was also documented in his ability or difficulty with heel and toe walking."). Here, the record contains evidence that Plaintiff had some loss of motor function. (*See, e.g.*, Dkt. 6 at 439 (on August 24, 2015, Dr. Vassilios G. Dimopoulos noted that Plaintiff was unable to stand on his left toes or heel), 378 (on October 9, 2015, Dr. Doak observed that Plaintiff could squat and rise from squatting but with pain in left groin), 400 (on December 7, 2015, Dr. Doak observed the same)). However, these observations were noted over the course of three appointments between August and December 2015. There is no evidence that before or after this time period, Plaintiff was observed to have motor loss, as evidenced by difficulty walking on the heels or toes, squatting, or rising from a squatting position. Accordingly, Plaintiff has failed to show motor loss for a continuous period of 12 months.

Plaintiff is also unable to show sensory loss for the requisite period as the medical evidence consistently noted intact sensation with no gross deficits. (*See id.* at 17 (Mercy Hospital of Buffalo Emergency Department ("Mercy ED") record dated April 2, 2018, noted intact sensation), 52-58 (Mercy ED record dated January 11, 2018, noted positive sensation in both legs, intact sensation, and no obvious gross deficits in sensation), 340 (on October 21, 2015, PA Hanretty observed normal upper and lower sensation), 348 (on August 17, 2015, PA Hanretty observed the same), 445 (Kenmore Mercy Hospital Emergency Department record dated April 11, 2017, noted normal sensation), 439 (on August 24, 2015, Dr. Dimopoulos noted "[s]ensory is grossly intact to light touch except decreased sensation in the left L5-S1 distribution")).

Moreover, as correctly noted by the ALJ, the medical evidence sometimes noted decreased reflexes and, at other times, did not note abnormalities. (*See id.* at 40; *see also* 58 (Mercy ED record dated January 11, 2018, noted normal (+2) deep tendon reflex in right and left patellar and right and left Achilles), 110 (on October 3, 2019, FNP Marianne Schuler noted absent deep tendon reflexes), 325 (on June 3, 2015, Dr. Kucera noted +1 deep tendon reflex in right prepatellar, but decreased and absent reflexes in left prepatellar), 328 (on June 25, 2015, Dr. Bridget A. Vacarro noted absent deep tendon reflexes), 342 (on October 21, 2015, PA Hanretty observed symmetrical deep tendon reflexes in upper and lower extremities), 452 (on November 25, 2015, Dr. Dimopoulos noted +1 deep tendon reflexes bilaterally, with the exception of left Achilles which was absent)). On this record, it was within the ALJ's discretion to determine that the record did not show the requisite reflex loss.

### C. Positive Straight Leg Raising Test

As required by the regulations, Plaintiff must demonstrate positive straight leg raising tests in both the seated and supine positions to satisfy Listing 1.04A. The record contains only five straight leg raising tests between August and December 2015. (*See* Dkt. 6 at 342, 348, 378, 401, 438). Four of the tests did not indicate positive straight leg raising for both the right and left legs. (*See id.* at 342 (on October 21, 2015, PA Elizabeth Hanretty observed positive straight leg raise on left but negative straight leg raise on right), 348 (on August 17, 2015, PA Hanretty observed positive straight leg raise on left but negative straight leg raise on right), 378 (on October 9, 2015, Dr. Doak observed negative straight leg on left), 401 (on December 7, 2015, Dr. Doak observed negative straight leg raise on

left)). The medical evidence contains one positive straight leg raising test conducted on August 24, 2015, by Dr. Dimopoulos. (*Id.* at 438). Although it is unclear whether the test was seated and supine, this single test is insufficient to demonstrate that Plaintiff's symptoms satisfied this requirement for a continuous period of twelve months.

In sum, the medical evidence of record does not show that Plaintiff's impairments rose to the level of severity described by Listing 1.04A for a 12-month continuous period; to the contrary, the evidence supports the conclusion that this level of severity was present at most in the latter half of 2015. Because Plaintiff has failed to make at least a colorable case that he meets or equals the requirements of Listing 1.04A, the ALJ's failure to provide a more fulsome explanation is not error requiring remand. *Beebe v. Astrue*, No: 5:10-CV-1467 (MAD), 2012 WL 3791258, at *4 (N.D.N.Y. Aug. 31, 2012) (finding ALJ's failure to provide specific rationale for finding that plaintiff's impairment did not meet Listing 1.04A did not require remand where the plaintiff had not established that she satisfied all the criteria symptoms of the Listing); *Tilbe v. Astrue*, No. 5:10-CV-910 (NAM/ATB), 2012 WL 2930784, at *10 (N.D.N.Y. July 17, 2012) ("Accordingly, any error in the ALJ's failure to consider whether plaintiff's impairment met or equaled Listing 1.04 is harmless because no view of the evidence would support a finding that plaintiff's impairment met all the specified medical criteria of Listing 1.04."); *Hunt v. Astrue*, No. 07-CV-1029, 2009 WL 3076209, at *7 (N.D.N.Y. Sept. 23, 2009) ("While the ALJ did not elaborate on his findings in the portion of his decision addressed to step 3, the record contains substantial evidence supporting the ALJ's determination that Plaintiff did not meet the requirements of Listing 1.04.").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:    July 27, 2020
          Rochester, New York